## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| MOUNTAIN DIVIDE, LLC, | ) | Case No. 16-61015-11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

---

### JOINT PLAN OF REORGANIZATION OF MOUNTAIN DIVIDE, LLC
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

**GUTHALS, HUNNES & REUSS, P.C.**
Jeffery A. Hunnes
Laura T. Myers
P.O. Box 1977
Billings, MT  59103-1977
T: (406) 245-3071
F: (406) 245-3074
jhunnes@ghrlawfirm.com
lmyers@ghrlawfirm.com

**WORDEN THANE, P.C.**
Martin S. King
111 N. Higgins Suite 600
P.O. Box 4747
Missoula, MT 59806
T: (406) 203-3127
F: (406) 721-6985
mking@wordenthane.com


**Attorneys for Debtor,
Mountain Divide, LLC**

**Attorneys for the Official Committee
of Unsecured Creditors**

Dated: October 16, 2017.

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS AND INTERPRETATION .................................................................. 1
    1.1.    Administrative Expense Claim ............................................................. 1
    1.2.    Allowed ................................................................................................ 1
    1.3.    American Pipe ....................................................................................... 1
    1.4.    American Pipe Claims .......................................................................... 2
    1.5.    Assignment of Net Profits Interest ...................................................... 2
    1.6.    Available Cash ...................................................................................... 2
    1.7.    Avoidance Actions ............................................................................... 2
    1.8.    Bankruptcy Code .................................................................................. 2
    1.9.    Bankruptcy Court .................................................................................. 2
    1.10.    Bankruptcy Rules ................................................................................ 2
    1.11.    Bar Date .............................................................................................. 2
    1.12.    Business Day ....................................................................................... 2
    1.13.    Canary ................................................................................................. 2
    1.14.    Canrig ................................................................................................. 2
    1.15.    Carve-Out Expenses ........................................................................... 3
    1.16.    Cash ..................................................................................................... 3
    1.17.    Causes of Action ................................................................................. 3
    1.18.    Chapter 11 Case .................................................................................. 3
    1.19.    Claim ................................................................................................... 3
    1.20.    Claims Register .................................................................................. 3
    1.21.    Class .................................................................................................... 3
    1.22.    Class 2 Well Lien Claimants ............................................................... 3
    1.23.    Closing Date ........................................................................................ 3
    1.24.    Coil Tubing ......................................................................................... 3
    1.25.    Collateral ............................................................................................ 3
    1.26.    Confirmation Date ............................................................................... 3
    1.27.    Confirmation Hearing ......................................................................... 3
    1.28.    Confirmation Order ............................................................................. 3
    1.29.    Creditors' Committee .......................................................................... 4
    1.30.    Creditors' Committee Professionals .................................................... 4
    1.31.    Crescent Point ..................................................................................... 4
    1.32.    Crescent Point Adversary Proceeding ................................................ 4
    1.33.    Debtor ................................................................................................. 4
    1.34.    Deficiency Claim ................................................................................ 4
    1.35.    Disclosure Statement .......................................................................... 4
    1.36.    Disputed .............................................................................................. 4
    1.37.    Distribution ......................................................................................... 4
    1.38.    Distribution Date ................................................................................ 4

1.39.    Distribution Record Date .................................................................... 4
1.40.    Effective Date ...................................................................................... 5
1.41.    Estate ................................................................................................... 5
1.42.    Executory Contract .............................................................................. 5
1.43.    Final Order .......................................................................................... 5
1.44.    General Unsecured Claim .................................................................... 5
1.45.    Governmental Unit ............................................................................... 5
1.46.    High Plains ........................................................................................... 5
1.47.    Holder .................................................................................................. 5
1.48.    Intercompany Claim ............................................................................ 5
1.49.    Interest ................................................................................................. 5
1.50.    Iron Gate .............................................................................................. 6
1.51.    K&D ..................................................................................................... 6
1.52.    Law ....................................................................................................... 6
1.53.    Lien ...................................................................................................... 6
1.54.    MBI Logistics ...................................................................................... 6
1.55.    MBI Rentals ......................................................................................... 6
1.56.    MBI Services ........................................................................................ 6
1.57.    Mi Swaco .............................................................................................. 6
1.58.    Mountain View Energy ........................................................................ 6
1.59.    Mountain View Energy Contributed Leases ........................................ 6
1.60.    Mountain View Energy Operating Contribution .................................. 6
1.61.    Nabors ................................................................................................... 6
1.62.    Net Profits ............................................................................................ 6
1.63.    Net Profits Interest ............................................................................... 6
1.64.    Northern Energy ................................................................................... 6
1.65.    Northern States ..................................................................................... 6
1.66.    Person ................................................................................................... 7
1.67.    Petition Date ........................................................................................ 7
1.68.    Plan ...................................................................................................... 7
1.69.    Plan Proponents ................................................................................... 7
1.70.    Plan Supplement ................................................................................... 7
1.71.    Precision ............................................................................................... 7
1.72.    Priority Non-Tax Claim ....................................................................... 7
1.73.    Priority Tax Claim ............................................................................... 7
1.74.    Professional Fee Claim ........................................................................ 7
1.75.    Professional .......................................................................................... 7
1.76.    Pro Rata Share ..................................................................................... 7
1.77.    Property ................................................................................................ 7
1.78.    PSA ....................................................................................................... 7
1.79.    Purchaser .............................................................................................. 8
1.80.    Reclamation Bond ................................................................................ 8
1.81.    Released Party ...................................................................................... 8

iii

1.82.    Reorganized Debtor ................................................................... 8
1.83.    Sale Order ................................................................................ 8
1.84.    Sale Proceeds .......................................................................... 8
1.85.    Sale Proceeds Fund ................................................................. 8
1.86.    Sale Proceeds Fund (Senior Secured Loan Claim) .................. 8
1.87.    Sale Proceeds Fund (Well Lien Claims) ................................... 8
1.88.    Sale Transaction ...................................................................... 8
1.89.    Sanjel ....................................................................................... 8
1.90.    Schedules ................................................................................ 8
1.91.    Schlumberger ........................................................................... 9
1.92.    Secured Claim .......................................................................... 9
1.93.    Senior Secured Loan ................................................................ 9
1.94.    Senior Secured Loan Claim ...................................................... 9
1.95.    Sentinel Prospect ..................................................................... 9
1.96.    Settling Well Lien Claimants .................................................... 9
1.97.    Tax Code .................................................................................. 9
1.98.    Unexpired Lease ....................................................................... 9
1.99.    Unsecured Creditor Fund ....................................................... 10
1.100.  Vehicle Allocation .................................................................. 10
1.101.  Weatherford ........................................................................... 10
1.102.  Weatherford Lift ..................................................................... 10
1.103.  Well Lien Claim ...................................................................... 10
1.104.  Well Lien Claimant ................................................................. 10
1.105.  Well Lien Statement ............................................................... 10
1.106.  Wells Fargo Energy Capital .................................................... 10
1.107.  Yankee .................................................................................... 10
1.108.  Interpretation, Application of Definitions and Rules of
          Construction ........................................................................... 10

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ........................... 11
2.1.     Administrative Claims ............................................................ 11
2.2.     Administrative Claim Bar Date ............................................... 11
2.3.     Professional Fee Claims .......................................................... 11
2.4.     U. S. Trustee Fees ................................................................... 12
2.5.     Priority Tax Claims ................................................................. 12

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND
          INTERESTS ............................................................................. 12
3.1.     Summary and Classification of Claims and Interests ............... 12
3.2.     Allowance and Treatment of Classified Claims ....................... 13
          (a)     Class 1 - Senior Secured Loan Claim ........................... 13
          (b)     Class 2 - Well Lien Claims ........................................... 13
          (c)     Class 3 - Priority Non-Tax Claims ............................... 14

|        | (d) | Class 4 - General Unsecured Claims | 14 |
|        | (e) | Class 5 - Intercompany Claims | 14 |
|        | (f) | Class 6 - Interests | 14 |

ARTICLE IV COMPROMISES AND SETTLEMENTS ................................................ 14

| 4.1. | | Settlements Generally | 14 |
| 4.2. | | Sale Proceeds Settlement | 14 |
|      | (a) | Allocation of the Sale Proceeds | 15 |
|      | (b) | American Pipe Claims | 15 |
|      | (c) | Unsecured Claims Fund | 15 |
|      | (d) | Allowance of Senior Secured Loan Claim | 15 |
|      | (e) | Allowance of Well Lien Claims | 15 |
|      | (f) | Deficiency Claims | 15 |
|      | (g) | Diminution in Value Claim and Cash Collateral | 15 |
|      | (h) | Dismissal of Claims | 15 |
|      | (i) | Releases | 16 |
|      | (j) | Additional Available Cash | 16 |
| 4.3. | | Crescent Point Settlement | 16 |
|      | (a) | Acknowledgments of the Debtor | 16 |
|      | (b) | Dismissal and Withdrawal of Claims | 16 |
|      | (c) | Allowance of Claims | 17 |
|      | (d) | Reservation of Rights | 17 |
|      | (e) | Release by Crescent Point | 17 |
| 4.4. | | SM Energy Settlement | 17 |
|      | (a) | Satisfaction of Allowed Unsecured Claim | 17 |
|      | (b) | Release by SM Energy | 17 |

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ............................................................................................ 18

| 5.1. | Rejection of Prepetition Unexpired Leases and Executory Contracts | 18 |
| 5.2. | Bar Date for Rejection Damage Claims | 18 |
| 5.3. | Insurance | 18 |

ARTICLE VI PROVISIONS GOVERNING ALLOWANCE AND
DISALLOWANCE OF CLAIMS AND DISTRIBUTIONS ......................... 19

| 6.1. | Disallowance of Claims | 19 |
| 6.2. | Claim Objections | 19 |
| 6.3. | Litigation and Settlement of Claims | 19 |
| 6.4. | Manner of Cash Payments Under the Plan | 19 |
| 6.5. | No Distribution Pending Allowance | 19 |
| 6.6. | Distribution Record Date | 20 |
| 6.7. | Estimation of Claims | 20 |
| 6.8. | Delivery of Distributions | 20 |
| 6.9. | Unclaimed Distributions | 20 |

      (a)    Undeliverable Distributions ...................................................... 20
      (b)    Time Bar to Cash Payments ...................................................... 21
6.10.   Withholding Taxes ............................................................................ 21
6.11.   Fractional Cents ................................................................................ 22
6.12.   De Minimis Distributions ................................................................. 22
6.13.   Setoffs ................................................................................................ 22

ARTICLE VII EFFECTIVENESS OF THE PLAN ..................................................... 22
7.1.    Condition Precedent to Confirmation of Plan ............................... 22
7.2.    Conditions Precedent to Effective Date ......................................... 23
7.3.    Waiver of Conditions ....................................................................... 23
7.4.    Satisfaction of Conditions ............................................................... 23
7.5.    Effect of Nonoccurrence of Conditions to Effective Date ............ 24
7.6.    Notice of Effective Date .................................................................. 24
7.7.    Request for Waiver of Stay of Confirmation Order ...................... 24
7.8.    Asset Purchase Agreement .............................................................. 24

ARTICLE VIII MEANS FOR IMPLEMENTATION AND EXECUTION OF THE
       PLAN ................................................................................................. 24
8.1.    Assignment of Mountain View Energy Contributed Leases in
       Sentinel Prospect and Net Profits Interests ................................... 24
8.2.    Funding of the Plan ......................................................................... 25
8.3.    Preservation/Vesting of Rights of Action ...................................... 25

ARTICLE IX EFFECT OF CONFIRMATION ........................................................... 26
9.1.    Vesting of Assets .............................................................................. 26
9.2.    Binding Effect of Plan/Full Satisfaction and Release of
       Claims/Discharge of Debtor ............................................................ 26
9.3.    Term of Injunctions or Stays ........................................................... 26
9.4.    Injunction .......................................................................................... 27
9.5.    Injunction Against Interference with Plan ..................................... 27
9.6.    Release by Debtor ............................................................................ 27
9.7.    Exculpation ....................................................................................... 28

ARTICLE X RETENTION OF JURISDICTION ........................................................ 29
10.1.   Jurisdiction of Bankruptcy Court ................................................... 29

ARTICLE XI CRAMDOWN RESERVATION ........................................................... 30
11.1.   Nonconsensual Confirmation .......................................................... 30

ARTICLE XII OTHER PLAN PROVISIONS ............................................................. 31
12.1.   Dissolution of Creditors' Committee .............................................. 31
12.2.   Substantial Consummation .............................................................. 31
12.3.   Exemption from Transfer Taxes...................................................... 31

12.4.	Payment of Statutory Fees ................................................................ 31
12.5.	Modification of Plan ........................................................................... 31
12.6.	Revocation or Withdrawal of Plan .................................................... 31
12.7.	Courts of Competent Jurisdiction ..................................................... 32
12.8.	Governing Law ................................................................................... 32
12.9.	Exhibits .............................................................................................. 32
12.10.	Successors and Assigns ...................................................................... 32
12.11.	Time .................................................................................................... 32
12.12.	Notices ............................................................................................... 32
12.13.	Entire Agreement .............................................................................. 33

EXHIBITS .................................................................................................... 34

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **MOUNTAIN DIVIDE, LLC,** | ) | **Case No. 16-61015-11** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

---

**JOINT PLAN OF REORGANIZATION OF MOUNTAIN DIVIDE, LLC**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

Mountain Divide, LLC, the above-captioned Debtor and Debtor-in-possession, and the Official Committee of Unsecured Creditors propose the following Joint Chapter 11 Plan of Reorganization pursuant to section 1121(a) of Title 11 of the United States Code:

**ARTICLE I**
**DEFINITIONS AND INTERPRETATION**

**Definitions.** The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

**1.1.** **Administrative Expense Claim**. Any right to payment constituting a cost or expense of administration of the Chapter 11 Case allowed under sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate; any actual and necessary costs and expenses of operating the Debtor's business; any indebtedness or obligations incurred or assumed by the Debtor, as Debtor-in-possession, during the Chapter 11 Case.

**1.2.** **Allowed**. With reference to any Claim, (i) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with this Plan, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or under this Plan.

**1.3.** **American Pipe**. American Pipe & Supply Co.

**1.4.** **American Pipe Claims**. Any claim or cause of action available to the Debtor against American Pipe including (i) claims against American Pipe relating to an alleged defective pipe coupling purchased by the Debtor from American Pipe; and (ii) those claims pending in the case styled *Mountain Divide, LLC v. American Pipe & Supply Co., et al.*, Montana 9th Judicial District Court, Glacier County, DV 15-52.

**1.5.** **Assignment of Net Profits Interest**. The instrument which assigns the Net Profits Interest as set forth in the Assignment of Net Profits Interest attached hereto as Exhibit A.

**1.6.** **Available Cash**. The Debtor's cash on hand as of the Effective Date, including any balance remaining in Debtor's Debtor-in-Possession General Operating account and Additional Available Cash as set forth in Section 4.2 j. as applicable, including any funds previously held in suspense by Sunoco and released to Debtor for use as cash collateral; provided, however, that Available Cash shall not include the Sale Proceeds or any proceeds of Causes of Action or Avoidance Actions.

**1.7.** **Avoidance Actions**. Any actions commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

**1.8.** **Bankruptcy Code**. Title 11 of the United States Code, as amended from time to time, as applicable to this Chapter 11 Case.

**1.9.** **Bankruptcy Court**. The United States Bankruptcy Court for the District of Montana, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Case under section 151 of title 28 of the United States Code.

**1.10.** **Bankruptcy Rules**. The Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to these Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

**1.11.** **Bar Date**. December 30, 2016.

**1.12.** **Business Day**. Any day other than a Saturday, a Sunday, or any other day on which banking institutions in Billings, Montana are required or authorized to close by law or executive order.

**1.13.** **Canary**. Canary, LLC.

**1.14.** **Canrig**. Canrig Drilling Technology, Ltd.

2

**1.15.**     **Carve-Out Expenses**.  Amounts paid by Debtor pursuant to Bankruptcy Court cash collateral orders and escrowed and held in trust by Debtor's bankruptcy counsel, earmarked and set aside for case professional fees pursuant to the cash collateral orders.

**1.16.**     **Cash**. Legal tender of the United States of America.

**1.17.**     **Causes of Action**. Any and all actions, causes of action, derivative litigation claims, claims against directors and officers, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, other than Avoidance Actions, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of this Chapter 11 Case.

**1.18.**     **Chapter 11 Case**. The chapter 11 case of the Debtor.

**1.19.**     **Claim**. The meaning set forth in section 101(5) of the Bankruptcy Code.

**1.20.**     **Claims Register**. The list maintained by the Clerk of the Bankruptcy Court listing all Claims filed in the Chapter 11 Case.

**1.21.**     **Class**. Any group of Claims or Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

**1.22.**     **Class 2 Well Lien Claimants**. The Settling Well Lien Claimants and Well Lien Claimants but not including Crescent Point.

**1.23.**     **Closing Date**. The date of the closing on the Sale Transaction.

**1.24.**     **Coil Tubing**. Coil Tubing Solutions, LLC.

**1.25.**     **Collateral**. Any property or interest in property of the Estate of the Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.26.**     **Confirmation Date**. The date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.27.**     **Confirmation Hearing**. The hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.28.**     **Confirmation Order**. The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

3

**1.29.** **Creditors' Committee**. The statutory committee of unsecured creditors appointed by the Office of the United States Trustee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

**1.30.** **Creditors' Committee Professionals**. Worden Thane, P.C.

**1.31.** **Crescent Point**. Crescent Point Energy U.S. Corp.

**1.32.** **Crescent Point Adversary Proceeding**. The case captioned *Crescent Point Energy US Corp. v. Mountain Divide, LLC*, Adv. Pro. No. 17-00002 (BPH) currently pending in the Bankruptcy Court.

**1.33.** **Debtor**. Mountain Divide, LLC on and after the Petition Date, and when the context so requires, in its capacity as debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code, and where the term is used with respect to rights and obligations on or after the Effective Date, it shall mean the Reorganized Debtor.

**1.34.** **Deficiency Claim**. Any portion of a Claim (a) to the extent the value of the holder's interest in the Collateral securing such Claim is less than the amount of such Claim, or (b) to the extent the amount of a Claim subject to setoff is less than the amount of the Claim, each as determined by the Bankruptcy Court under Bankruptcy Code section 506(a).

**1.35.** **Disclosure Statement**. The disclosure statement relating to the Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.36.** **Disputed**. With respect to any Claim or Interest, any Claim or Interest to which the Debtor or any other party in interest authorized by the Plan has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or that is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, or dispute has not been settled, waived, withdrawn, or determined by a Final Order. A Claim that is Disputed by the Debtor as to its amount only shall be deemed Allowed in the amount the Debtor admits to be owing, if any, and Disputed as to the excess.

**1.37.** **Distribution**. The distribution, in accordance with the Plan, of Cash or other Property, as the case may be, or the Cash or other Property as distributed.

**1.38.** **Distribution Date**. The date occurring on or as soon as reasonably practicable after the Effective Date, but in no event sooner than fourteen (14) days following the Effective Date.

**1.39.** **Distribution Record Date**. The date that is the Confirmation Date.

**1.40.    Effective Date**. A Business Day on or after the Confirmation Date specified by the Debtor on which (i) no stay of the Confirmation Order is in effect, and (ii) the conditions to the effectiveness of the Plan specified in Section 7.2 hereof have been satisfied or waived.

**1.41.    Estate**. The estate of the Debtor in the Chapter 11 Case as created under section 541 of the Bankruptcy Code.

**1.42.    Executory Contract**. Any contract to which a Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

**1.43.    Final Order**. As applicable, an order or judgment, entered by the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, that has not been or reversed, and as to which (i) no stay is in effect, (ii) the time to seek rehearing, file a notice of appeal or petition for certiorari has expired, (iii) no appeal, request for stay, petition seeking certiorari, or other review has been timely filed and is pending and (iv) any appeal that has been taken, any petition for certiorari, or motion for a new trial, reargument or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule (whether federal or state) may be but has not then been filed with respect to such order shall not cause such order not to be a Final Order.

**1.44.    General Unsecured Claim**. Any Claim against the Debtor that is (i) not an Administrative Expense Claim, Priority Tax Claim, Secured Claim, or Priority Non-Tax Claim, or (ii) otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**1.45.    Governmental Unit**. The meaning specified in Bankruptcy Code section 101(27).

**1.46.    High Plains**. High Plains, Inc.

**1.47.    Holder**. The owner or holder of any Claim or Interest.

**1.48.    Intercompany Claim**. A Claim of Mountain View Energy or Mountainview Energy, Ltd. against the Debtor.

**1.49.    Interest**. With respect to the Debtor, any "equity security" as such term is defined in section 101(16) of the Bankruptcy Code, whether or not asserted, of any equity security holder of the Debtor, as defined in section 101(17) of the Bankruptcy Code. Interest shall also include, without limitation, all stock, partnership, membership interest, warrants, options or other rights to purchase or acquire any equity interests in a Debtor.

**1.50.**    **Iron Gate**. Iron Gate Rental Services, LLC.

**1.51.**    **K&D**. K&D Enterprises, Inc. d/b/a Pressure Pumping Services.

**1.52.**    **Law**. Any law, rule, regulation, order, decree or other requirement having the force of law and, where applicable, any interpretation thereof by an authority having jurisdiction with respect thereto or charged with administration thereof.

**1.53.**    **Lien**. A judicial lien as defined in section 101(36) of the Bankruptcy Code; a lien as defined in section 101(37) of the Bankruptcy Code; a security interest as defined in section 101(51) of the Bankruptcy Code; a statutory lien as defined in section 101(53) of the Bankruptcy Code; and any other lien, interest, charge or encumbrance.

**1.54.**    **MBI Logistics**. MBI Energy Logistics, LLC.

**1.55.**    **MBI Rentals**. MBI Energy Rentals, Inc.

**1.56.**    **MBI Services**. MBI Energy Services.

**1.57.**    **Mi Swaco**. M-I, LLC d/b/a MI-SWACO.

**1.58.**    **Mountain View Energy**. Mountain View Energy, Inc., a Montana corporation.

**1.59.**    **Mountain View Energy Contributed Leases**. The oil and gas leasehold working interests in the Sentinel Prospect contributed to the Reorganized Debtor by Mountain View Energy as set forth in the Assignment of Leases attached hereto as Exhibit B.

**1.60.**    **Mountain View Energy Operating Contribution**.    The capital contribution committed to be paid by Mountain View Energy during the 18 month period following the Confirmation Date, as provided in the Mountain View Energy Agreement to Fund and Capitalize attached hereto as Exhibit C.

**1.61.**    **Nabors**. Nabors Drilling USA, LP.

**1.62.**    **Net Profits**. The meaning attributable to the term "Net Profits" in the Assignment of Net Profits Interest.

**1.63.**    **Net Profits Interest**. The meaning attributed to the term "Net Profits Interest" in the Assignment of Net Profits Interest.

**1.64.**    **Northern Energy**. Northern Energy Services, LLC.

**1.65.**    **Northern States**. Northern States Completions.

1.66.    **Person**. The meaning set forth in section 101(41) of the Bankruptcy Code.

1.67.    **Petition Date**. October 14, 2016.

1.68.    **Plan**. This joint chapter 11 plan of reorganization, including exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.69.    **Plan Proponents**. The Debtor and the Creditors' Committee.

1.70.    **Plan Supplement**. A separate volume of documents that may be filed with the Bankruptcy Court not less than 14 days prior to the Confirmation Hearing.

1.71.    **Precision**. Precision Completion & Production Services, Ltd.

1.72.    **Priority Non-Tax Claim**. Any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.73.    **Priority Tax Claim**. Any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.74.    **Professional Fee Claim**. A Claim under Bankruptcy Code sections 327, 328, 330, 331, 503, or 1103 for compensation for professional services rendered or expenses incurred on behalf of the Estate either by one of the Debtor's Professionals or one of the Committee Professionals.

1.75.    **Professional**. An Entity (i) employed pursuant to a Final Order in accordance with sections 327, 328 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been Allowed under section 503(b)(4) of the Bankruptcy Code by the Bankruptcy Court pursuant to a Final Order.

1.76.    **Pro Rata Share**. At any time, the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims (including Disputed Claims, but excluding Disallowed Claims) in that particular Class, unless the Plan provides otherwise.

1.77.    **Property**. All property and interests in property of the Estate of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtor or acquired by the Estate as defined in Section 541 of the Bankruptcy Code.

1.78.    **PSA**. That certain Purchase and Sale Agreement dated January 18, 2017, as subsequently amended, among the Debtor, as the Seller, and Purchaser, as Buyer.

    **1.79.**    **Purchaser**. Future Acquisition North Dakota, LLC as assignee of Future Acquisition Company, LLC.

    **1.80.**    **Reclamation Bond**. The cash bonds in the amount of $99,525 submitted by the Debtor to the North Dakota Industrial Commission and approximately $10,400 submitted by the Debtor to the United States of America.

    **1.81.**    **Released Party**. Collectively, (i) the Debtor; (ii) the Reorganized Debtor, (iii) the Estate; (iv) the Creditors' Committee and the current and former members thereof, in their capacity as such, (v) Wells Fargo Energy Capital; (vi) the Settling Well Lien Claimants; (vii) Mountain View Energy; (viii) with respect to each of the entities in clauses (i) through (vii), such entities' subsidiaries, advisors, employees, officers, directors, representatives, members, financial advisors, attorneys, accountants, investment bankers, consultants, agents, and other representatives, in each case, solely in their capacity as such.

    **1.82.**    **Reorganized Debtor**. The Debtor, from and after the Effective Date.

    **1.83.**    **Sale Order**. The Order (A) Authorizing and Approving (i) the Asset Purchase Agreement; (ii) the Sale of Certain Assets to Future Acquisition Company, LLC Free and Clear of All Liens, Claims, Encumbrances and Interests; and (iii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (B) Granting Related Relief [Docket No. 199], pursuant to which the Sale Transaction was approved by the Bankruptcy Court.

    **1.84.**    **Sale Proceeds**. The proceeds of the Sale Transaction.

    **1.85.**    **Sale Proceeds Fund**. The Sale Proceeds less the Vehicle Allocation.

    **1.86.**    **Sale Proceeds Fund (Senior Secured Loan Claim)**. An amount equal to seventy-five percent (75%) of the Sale Proceeds Fund.

    **1.87.**    **Sale Proceeds Fund (Well Lien Claims)**. An amount equal to twenty-five percent (25%) of the Sale Proceeds Fund.

    **1.88.**    **Sale Transaction**. The sale of substantially all assets of the Debtor to the Purchaser pursuant to the PSA and the Sale Order.

    **1.89.**    **Sanjel**. Sanjel (USA), Inc.

    **1.90.**    **Schedules**. The schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended from time to time through the Confirmation Date.

**1.91.**     **Schlumberger**. Schlumberger Technology Corp.

**1.92.**     **Secured Claim**. A Claim (i) secured by Collateral, to the extent of the value of such Collateral (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtor, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

**1.93.**     **Senior Secured Loan**. That certain Credit Agreement dated November 1, 2012 by and between the Debtor as borrower and Wells Fargo Energy Capital as lender, as amended and that certain Promissory Note dated November 1, 2012 issued by the Debtor in favor of Wells Fargo Energy Capital secured and perfected by assignments, pledges, mortgages, control agreements, financing statements, fixture filings and other interrelated instruments, including (i) the General Security Agreement, (ii) the recorded Mortgage, Collateral Real Estate Mortgage, Security Agreement, Assignment of Production and Proceeds, Financing Statement and Fixture Filing, (iii) the recorded First Amended Mortgage, Collateral Real Estate Mortgage, Security Agreement, Assignment of Production and Proceeds, Financing Statement and Fixture Filing, (iv) the Second Amended Mortgage, Collateral Real Estate Mortgage, Security Agreement, Assignment of Production and Proceeds, Financing Statement and Fixture Filing, (v) the recorded Assignment of Net Profits Interest, (vi) the recorded First Amendment to Assignment of Net Profits Interest, (vii) the Deposit Account Control Agreements, and (viii) the UCC-1 Financing Statement filed with the Montana Secretary of State on November 7, 2012 in favor of Wells Fargo Energy Capital.

**1.94.**     **Senior Secured Loan Claim**. All Claims against the Debtor including Claim No. 58-1 arising under the Senior Secured Loan or any ancillary agreement.

**1.95.**     **Sentinel Prospect**. The oil and gas leases in Wibaux County, Montana and Golden Valley County, North Dakota contributed to the Reorganized Debtor by Mountain View Energy as set forth in the attached Exhibit B and to be promoted by Reorganized Debtor as an oil and gas development project.

**1.96.**     **Settling Well Lien Claimants**. Collectively: American Pipe, Nabors, Canrig, Iron Gate, Precision, MBI Services, MBI Logistics, MBI Rentals, High Plains, and Yankee.

**1.97.**     **Tax Code**. Title 26 of the United States Code, as amended from time to time.

**1.98.**     **Unexpired Lease**. A lease of nonresidential real or personal property to which a Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.99.    Unsecured Creditor Fund**. Collectively: (a) a payment equal to a contribution of $30,000 from the Sale Proceeds Fund (Senior Secured Loan Claim); (b) a payment equal to a contribution of $30,000 from the Sale Proceeds Fund (Well Lien Claims); (c) the proceeds realized by the Debtor from the refund of the Reclamation Bond(s); (d) $14,184.79 received by the Debtor from the American Standard Energy Corp. bankruptcy proceeding; and (e) the Vehicle Allocation.

**1.100.    Vehicle Allocation**. $30,000.00 attributable to the sale of 2008 Chevrolet Silverado, 2013 Ford F250, and 2014 Honda Pilot in the Sale Transaction.

**1.101.    Weatherford**. Weatherford US LP.

**1.102.    Weatherford Lift**. Weatherford Artificial Lift Systems, LLC.

**1.103.    Well Lien Claim**. A claim for materials or services provided in the drilling, completion, or operation of an oil or gas well sold under the Sale Order, for which a timely proof of Claim has been filed by such Claimant.

**1.104.    Well Lien Claimant**. Any Claimant that has (i) timely filed a Well Lien Statement against assets of the Debtor; and (ii) timely filed a proof of Claim.

**1.105.    Well Lien Statement**. A lien statement filed by a Lien Claimant with the Recorder of Divide County, North Dakota under title 35, chapter 24 of the North Dakota Century Code against assets of the Debtor.

**1.106.    Wells Fargo Energy Capital**. Wells Fargo Energy Capital, Inc.

**1.107.    Yankee**. Yankee Fishing & Rental.

**1.108.    Interpretation, Application of Definitions and Rules of Construction**. Except as otherwise provided in the Plan, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the Plan. Wherever the context requires, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Terms used but not defined in the Plan shall have the meanings ascribed to such terms by the Bankruptcy Code or the Bankruptcy Rules, as the case may be. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Article, Section, or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize, limit, or expand the generality of the class within which such things are included. Any references to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns. Captions and headings to articles, Sections and exhibits are inserted for convenience of reference only, are not a part of the Plan, and shall not be used to interpret the Plan.

10

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.** **Administrative Claims**. Subject to the deadline described in Section 2.2 and other provisions herein and except to the extent the Debtor and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, the Debtor shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date and (ii) the first Business Day after the date that is 30 calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. Allowed Administrative Claims shall be paid from Available Cash.

**2.2.** **Administrative Claim Bar Date**. Except as provided below for (i) Professionals requesting compensation or reimbursement for Professional Fee Claims, and (ii) U.S. Trustee Fees; requests for payment of Administrative Claims must be filed no later than 30 days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by Order of the Bankruptcy Court. Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the applicable deadline, shall be forever barred from asserting such Claims against the Debtor or its property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.

**2.3.** **Professional Fee Claims**. A Professional Fee Claim for services and expenses rendered or incurred prior to the Effective Date, will be Allowed only if (a) on or before sixty (60) days after the Effective Date, the Entity holding such Professional Fee Claim both files with the Court a final fee application or a motion requesting allowance of the fees and serves the application or motion with a Fed. R. Bankr. P. 2022(a)(6) notice of twenty (21) days on the counsel to the Reorganized Debtor, the Creditors' Committee, Wells Fargo Energy Capital and the U.S. Trustee; and (b) the Court approves the application pursuant to a Final Order. Only the Reorganized Debtor, Creditors' Committee, Wells Fargo Energy Capital, or the U.S. Trustee may object to such application or motion and they must do so within fourteen (14) days of the filing of such application or motion, provided, that, in the event that Wells Fargo Energy Capital objects it shall do so at its own expense and shall not seek reimbursement from the Debtor, Reorganized Debtor, or otherwise. Any Entity holding a Professional Fee Claim that does not timely file and serve a fee application or motion for payment thereof shall be forever barred from asserting such Claim against the Debtor, its Estate, Reorganized Debtor, or their respective property. Allowed Professional Fee Claims of Debtor's Counsel and Counsel for the Creditors' Committee will be paid first from any balance remaining of Carve Out Expenses escrowed and held in trust by Debtor's bankruptcy counsel, and then from Available Cash. In addition, Debtor's bankruptcy counsel holds a retainer to be applied to Debtor's counsel's approved final professional fees and costs. Professional

11

Fee Claims relating to the American Pipe Claims shall be filed within sixty (60) days after final settlement of the American Pipe Claims. Allowed Professional Fee Claims will be paid (a) within thirty (30) days after the date on which the Bankruptcy Court allows such Claim pursuant to a Final Order, or (b) upon such other terms as may be mutually agreed between or among the Holder of such Professional Fee Claim and the Reorganized Debtor.

**2.4.    U. S. Trustee Fees**. U.S. Trustee Fees owing by either Debtor to the extent Allowed shall be paid in accordance with 28 U.S.C. § 1930. U.S. Trustee fees due and owing under 28 U.S.C. § 1930 shall be paid from Available Cash on the Distribution Date.

**2.5.    Priority Tax Claims**. Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Estate prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim, consisting of the Allowed Priority Tax Claim of the Internal Revenue Service in the amount of $21.66 and the Allowed Priority Tax Claim of the North Dakota Tax Commissioner in the amount of $342.00, will be paid cash in the Allowed amount of such Allowed Priority Tax Claim on the Effective Date, or as soon thereafter as is practicable from Available Cash.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**3.1.    Summary and Classification of Claims and Interests**.

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described above, have not been classified and are not entitled to vote on the Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to reject the Plan:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Senior Secured Loan Claim | Impaired | Yes |

12

| Class 2 | Well Lien Claims | Impaired | Yes |
|---------|------------------|----------|-----|
| Class 3 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Intercompany Claims | Impaired | Yes (vote not counted) |
| Class 6 | Interests | Unimpaired | Yes (vote not counted) |

**3.2.** **Allowance and Treatment of Classified Claims**.

(a) **Class 1 - Senior Secured Loan Claim**. The Senior Secured Loan Claim filed by Wells Fargo Energy Capital shall be Allowed in the amount specified in the Debtor's Schedules of $56,100,925.19. On the Effective Date, in full and final satisfaction of the Senior Secured Loan Claim, Wells Fargo Energy Capital shall (i) receive a payment equal to the Sale Proceeds Fund (Senior Secured Loan Claim); (ii) possess and retain its perfected first-priority lien in the American Pipe Claims and the proceeds of the American Pipe Claims; and (iii) receive a payment equal to the future proceeds of the American Pipe Claims net of the Debtor's Professional fees and expenses approved by a Final Order of the Bankruptcy Court. Wells Fargo Energy Capital shall not be entitled to any Deficiency Claim hereunder on account of its Senior Secured Loan Secured Claim and shall not receive a distribution from Class 4 General Unsecured Claims. On the Effective Date, and except as otherwise provided in the Plan, Wells Fargo shall release any security interests in property or assets of Debtor or Mountain View Energy.

(b) **Class 2 - Well Lien Claims**. Subject to adjustments agreed to by the Debtor and a Class 2 Well Lien Claimant, the Well Lien Claims filed by the Class 2 Well Lien Claimants shall be Allowed in the amount specified in the Debtor's Schedules. On the Effective Date, in full and final satisfaction of each of their respective Claims, the Class 2 Well Lien Claimants shall each receive (i) a Pro Rata Share of the Sales Proceeds Fund (Well Lien Claimants); and (ii) an assignment of a percentage of the Net Profits Interest in the Sentinel Prospect equal to the Well Lien Claimant's Allowed Claim divided by the total amount of Allowed Claims in Class 2 plus the total amount of Allowed Claims in Class 4 General Unsecured Claims. No Class 2 Well Lien Claimant shall be entitled to any Deficiency Claim hereunder on account of its Well Lien Claim and shall not receive a distribution from Class 4 General Unsecured Claims; provided, however, that a Class 2 Well Lien Claimant that has timely filed a General Unsecured Claim separately from its Well Lien Claim shall retain such Claim subject, in all respects, to becoming an Allowed Claim.

13

(c)  **Class 3 - Priority Non-Tax Claims**. Each holder of a Class 3 Priority Non-Tax Claim shall receive Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Priority Non-Tax Claim on the Effective Date or as soon thereafter as is practicable, payable from Available Cash.

(d)  **Class 4 - General Unsecured Claims**. On the Effective Date, or as soon as the sum of all Allowed General Unsecured Claims has been determined, holders of Allowed General Unsecured Claims shall receive (i) a Pro Rata Share of the Unsecured Creditor Fund; and (ii) an assignment of a percentage of the Net Profits Interest in the Sentinel Prospect equal to the General Unsecured Creditor's Allowed Claim divided by the total amount of Allowed Claims in Class 2 plus the total amount of Allowed Claims in Class 4.

(e)  **Class 5 - Intercompany Claims**. Intercompany Claims are eliminated and Holders of Intercompany Claims will not receive a distribution of property or interest in property under the Plan.

(f)  **Class 6 - Interests**. The sole holder of an Interest in the Debtor, Mountain View Energy, shall retain its Interest but shall not receive a distribution of any Property or interest in Property under the Plan.

## ARTICLE IV
## COMPROMISES AND SETTLEMENTS

**4.1.    Settlements Generally**. Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim against or Interest in any of the Debtor may have with respect to any Allowed Claim or Interest as to any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest.

The Confirmation Order, subject to the occurrence of the Effective Date, shall constitute an order of the Bankruptcy Court finding and determining that the settlements provided for in the Plan are (a) in the best interests of Creditors and the Estates, (b) fair, equitable, and reasonable, (c) made in good faith, and (d) approved by the Bankruptcy Court.

**4.2.    Sale Proceeds Settlement**.

The Plan provides for the settlement of the claims and defenses of Wells Fargo Energy Capital, the Settling Well Lien Claimants, the Creditors Committee, and Mountain View Energy, with respect to the Sale Proceeds, claims of any nature whatsoever (excluding the American Pipe Claims), and other matters with such settlements effective as of the Effective Date. Pursuant to the settlement:

(a) **Allocation of the Sale Proceeds**. On the Effective Date, (i) Wells Fargo Energy Capital shall be the sole holder of a Class 1 - Senior Secured Loan Claim and receive a distribution equal to the Sale Proceeds Fund (Senior Secured Loan Claim); and (ii) the Settling Well Lien Claimants shall each hold a Class 2 Well Lien Claim and receive a distribution equal to the Sale Proceeds Fund (Well Lien Claims) with each Settling Well Lien Claimant sharing in the Sale Proceeds Fund (Well Lien Claims) on a Pro Rata basis without priority.

(b) **American Pipe Claims**. The American Pipe Claims are expressly preserved under the Plan, Wells Fargo Energy Capital possesses and retains a perfected first-priority security interest in the American Pipe Claims. Any recoveries by the Debtor on the American Pipe Claims, net of the Debtor's Allowed Professional Fee Claims and expenses approved by a Final Order of the Bankruptcy Court, are for the sole benefit of Wells Fargo Energy Capital and shall be promptly delivered to Wells Fargo Energy Capital upon receipt by the Reorganized Debtor.

(c) **Unsecured Creditor Fund**. The Unsecured Creditor Fund shall be available for distribution to holders of Allowed Class 4 General Unsecured Claims.

(d) **Allowance of Senior Secured Loan Claim**. The Senior Secured Loan Claim filed by Wells Fargo Energy Capital shall be Allowed in the amount specified in the Debtor's Schedules.

(e) **Allowance of Well Lien Claims**. Subject to adjustments agreed to by the Debtor and a Settling Well Lien Claimant, the Well Lien Claims filed by the Settling Well Lien Claimants shall be Allowed in the amount specified in the Debtor's Schedules.

(f) **Deficiency Claims**. Wells Fargo Energy Capital and the Settling Well Lien Claimants shall not assert or be entitled to an Unsecured Deficiency Claim and shall not receive a distribution from Class 4 General Unsecured Claims.

(g) **Diminution in Value Claim and Cash Collateral**. Wells Fargo Energy Capital (i) waives any Claim relating to the diminution in value of its Collateral during the Chapter 11 Case; and (ii) consents to the Debtor using Available Cash to the extent Available Cash is Wells Fargo Energy Capital's Collateral.

(h) **Dismissal of Claims**. Upon the Confirmation Order becoming a Final Order, American Pipe shall execute and deliver and make such filings as are necessary to dismiss any claims released under Section 4.2(i) with prejudice, including, without limitation, the claims asserted in Montana and North Dakota.

15

(i)      **Releases**. Effective upon the Effective Date, each of the Released Parties forever knowingly and voluntarily, irrevocably, fully, and unconditionally releases, remises, and forever discharges each other Released Party for any and all claims, actions, causes of action (including causes of action under chapter 5 of the Bankruptcy Code) and liabilities of any kind arising out of any matter, cause or thing whatsoever; provided, however, that this release does not extend to the American Pipe Claims held by the Debtor against American Pipe which are expressly preserved under the Plan.

(j)      **Additional Available Cash**. In consideration for the releases set forth in the Plan, Mountain View Energy covenants and agrees to contribute up to a maximum of $45,000 if, and only in the event, Available Cash is insufficient to satisfy the payment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, and U.S. Trustee Fees.

**4.3.      Crescent Point Settlement**.

The Plan provides for the settlement of the Crescent Point Adversary Proceeding and the Crescent Point claims with such settlement effective as of the Effective Date. Pursuant to the settlement:

(a)      **Acknowledgments of the Debtor**. The Debtor acknowledges, to the best of its knowledge, information, and belief:

(i)      After the Petition Date, the Debtor informed the North Dakota Industrial Commission (a) of the commencement of the Chapter 11 Case; and (b) that the Debtor intended to sell its interest in the well bore and related equipment of the Aaberg 8-5N-1H Well during the course of the Chapter 11 Case;

(ii)      The Debtor is unaware of any forfeiture, confiscation, or taking of its interest in the well bore and related equipment of the Aaberg 8-5N-1H Well; and

(iii)      The Sale Order conveyed the Debtor's interest in the well bore and equipment related to Aaberg 8-5N-1H Well and did not purport to convey the interest Crescent Point asserts in the well bore and equipment related to Aaberg 8-5N-1H Well under 11 U.S.C. § 363(h) or otherwise.

(b)      **Dismissal and Withdrawal of Claims**. Upon becoming a Final Order, Crescent Point and the Debtor shall file a joint voluntary dismissal of the Crescent Point Adversary Proceeding with prejudice and the Confirmation Order shall be deemed an order disallowing the Crescent Point Secured Claim. Crescent Point shall execute and make such filings as are necessary to evidence the foregoing.

(c) **Allowance of Claims**. Upon becoming a Final Order, the Confirmation Order shall be deemed an order granting Crescent Point an Allowed Class 4 General Unsecured Claim in the amount of $398,176.80. For the avoidance of doubt, Crescent Point shall not receive a distribution from any Class other than Class 4 General Unsecured Claims.

(d) **Reservation of Rights**. Crescent Point reserves the right to (i) assert any interest or claim in the well bore and equipment related to Aaberg 8-5N-1H it may have under any applicable law, provided, however, that Crescent Point is barred from asserting any right relating to the Debtor's interest in the well bore and equipment related to Aaberg 8-5N-1H sold under the Sale Order; and (ii) assert any interest or claim it may have to a share of future oil and gas production from the spacing unit served by the Aaberg 8-5N-1H Well under any applicable law.

(e) **Release by Crescent Point**. Effective upon the Effective Date, Crescent Point forever knowingly and voluntarily, irrevocably, fully, and unconditionally releases, remises, and forever discharges the Debtor, the Estate, Mountain View Energy, and its corporate shareholders and affiliates from any and all claims, actions, causes of action and liabilities that were asserted or may be asserted against them.

**4.4. SM Energy Settlement**.

The Plan provides for the settlement of the SM Energy Allowed Unsecured Claim with such settlement effective as of the Effective Date. Pursuant to the settlement:

(a) **Satisfaction of Allowed Unsecured Claim**. The Allowed Unsecured Claim of SM Energy in the amount of $339,538.00 shall be paid and satisfied in full by assignment of Debtor's non-operating working interests, if any, in the Orlynne, Dorothy 3-27HS, Dorothy 3-27HST, and Vincent Trust 16-21HS Wells and related leasehold interests in the spacing units for those wells, without warranty of title, free and clear of liens and encumbrances and interests, in the form of Assignment to be set forth in the Plan Supplement.

(b) **Release by SM Energy**. Effective upon the Effective Date, SM Energy forever knowingly and voluntarily, irrevocably, fully, and unconditionally releases, remises, and forever discharges the Debtor, the Estate, Mountain View Energy, and its shareholders and affiliates, from any and all claims, actions, causes of action and liabilities that were asserted or may be asserted against them.

17

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

**5.1.     Rejection of Prepetition Unexpired Leases and Executory Contracts**. Any and all pre-petition Unexpired Leases or Executory Contracts not previously rejected by the Chapter 11 Trustee or the Debtor, unless specifically assumed pursuant to orders of the Bankruptcy Court prior to the Confirmation Date or the subject of a motion to assume or assume and assign pending on the Confirmation Date, shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code by the Debtor on the Confirmation Date. Each such contract and lease will be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. To the extent that any loan agreement to which any Debtor is lender or security agreement to which any Debtor is a beneficiary is deemed to be an Executory Contract, rejection of such agreement, shall not, by itself, eliminate the borrower's obligations thereunder or cause any of the Debtor' Liens or ownership rights or benefits to be released, terminated, discharged, impaired or otherwise rendered unenforceable. The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections, pursuant to Section 365 of the Bankruptcy Code, as of the Confirmation Date.

**5.2.     Bar Date for Rejection Damage Claims**. Any and all proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases shall, unless another order of the Bankruptcy Court provides for an earlier date, be filed within thirty (30) days after the filing of notice of entry of the Confirmation Order. Any proof of Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not timely filed shall be disallowed automatically and forever barred, estopped and enjoined from assertion and shall not be enforceable against the Debtor or the Estate or their respective Property, without the need for any objection or any further notice to or action, order or approval of the Bankruptcy Court, and any Claim arising out the rejection of the Unexpired Lease or Executory Contract or shall be deemed fully satisfied and released notwithstanding anything in the Schedules or a proof of Claim to the contrary. All Allowed Claims arising from the rejection of an Unexpired Lease or Executory Contract shall be treated as Class 4 General Unsecured Claims for purposes of a distribution pursuant to the Plan.

**5.3.     Insurance**. For the avoidance of doubt, the Debtor's rights with respect to all insurance policies under which any of the Debtor may be a beneficiary (including all insurance policies that may have expired prior to the Petition Date, all insurance policies entered into by any of the Debtor or Estates after the Petition Date, and all insurance policies under which any of the Debtor or Estates hold rights to make, amend, prosecute or benefit from claims), are retained and will be transferred and assigned to the Reorganized Debtor pursuant to the Plan. The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policy.

18

## ARTICLE VI
## PROVISIONS GOVERNING ALLOWANCE AND DISALLOWANCE OF
## CLAIMS AND DISTRIBUTIONS

**6.1.** **Disallowance of Claims**. Except as otherwise agreed, any and all proofs of Claim filed after the Bar Date shall be deemed disallowed as of the Effective Date without any further notice to, or action, order or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late proof of Claim is deemed timely filed by a Final Order of the Bankruptcy Court. Nothing herein shall in any way alter, impair or abridge the legal effect of the Bar Date or the rights of the Debtor or the Reorganized Debtor, Creditor's Committee, or Wells Fargo Energy Capital to object to Claims (except to the extent such claims are Allowed Claims) on the grounds that they are time barred or otherwise subject to disallowance, subordination or modification.

**6.2.** **Claim Objections**. Unless otherwise ordered by the Bankruptcy Court, objections to Claims must be filed no later than 60 days following the Effective Date and may be filed and prosecuted by Reorganized Debtor, Creditor's Committee, or Wells Fargo Energy Capital.  The Court may enter an order extending this deadline for cause shown.

**6.3.** **Litigation and Settlement of Claims**. Subject to the terms of the Plan, objections to Claims may be litigated to judgment, settled, or withdrawn.  Distributions for Claims Allowed as of the Effective Date. The Reorganized Debtor shall make the Distributions it is required to make under the Plan, except where otherwise provided. To the extent required by applicable law, the Reorganized Debtor, in making Distributions of Cash under the Plan, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution of Cash due to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any Governmental Unit.

**6.4.** **Manner of Cash Payments Under the Plan**. Cash payments to a domestic Holder of an Allowed Claim will be tendered in United States dollars and will be made by checks drawn on a United States domestic bank or by wire transfer from a United States domestic bank. Any domestic Holder of an Allowed Claim that wishes to receive a cash payment by wire transfer shall provide wire instructions to the Reorganized Debtor. In any such case, the Reorganized Debtor shall make the Cash payment(s) by wire transfer in accordance with the wire instructions, provided, that, the costs of such wire transfer shall be deducted from such entity's Distribution.

**6.5.** **No Distribution Pending Allowance**. Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or

19

distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**6.6.    Distribution Record Date**. The Confirmation Date shall serve as the record date for distributions from the Reorganized Debtor.

**6.7.    Estimation of Claims**. The Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether an objection has been filed with respect to such Claim. If the Bankruptcy Court estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed Claim for such Claim or a maximum limitation on such Claim, at the option of the Reorganized Debtor. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtor may elect to pursue any supplemental proceedings to object to the allowance and ultimate distribution on such Claim. Unless otherwise ordered by the Bankruptcy Court, resolution or compromise of estimated Claims shall be done pursuant to the Plan. All Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.

**6.8.    Delivery of Distributions**. Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the Schedules, on the books and records of the Debtor or their agents, or in a letter of transmittal, unless the Debtor or the Reorganized Debtor, as the case may be, have been notified in writing by the applicable Holder of a change of address, including by the Filing of a proof of Claim by such Holder different from the address reflected on the Schedules for such Holder.

**6.9.    Unclaimed Distributions**.

**(a)    Undeliverable Distributions**. In the event that any distribution to any Holder of an Allowed Claim is returned as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor is notified of such Holder's then-current address. If any Holder of an Allowed Claim does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder of an Allowed Claim entitled thereto, such unclaimed property shall be deemed to be forfeited by such Holder, whereupon all right, title and interest in and to the unclaimed property shall be held by the Reorganized Debtor and any Holder thereof shall be forever barred, estopped and enjoined from asserting any such Claim against the Debtor, the Estate, and the Reorganized Debtor. In such cases, any Cash or other property otherwise reserved for undeliverable or unclaimed distributions shall become Property of the Reorganized Debtor free and clear of any restrictions thereon and notwithstanding any federal or state escheatment

20

laws to the contrary and shall be distributed in accordance with the terms of the Plan first to pay Allowed Administrative Claims, Priority Tax Claims, or Professional Fee Claims, then to the other Holders of Allowed Class 4 General Unsecured Claims on a Pro Rata basis (subject to the terms and conditions of this Plan). Nothing contained in the Plan or otherwise shall require any of the Debtor or the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

**(b)** **Time Bar to Cash Payments**. In the event that any distribution to any Holder of an Allowed Claim made by check is not cashed within sixty (60) days after issuance thereof, a stop payment order shall be given with respect to such check rendering the check null and void. Requests for reissuance of any check subject to a stop payment order shall be made in writing to the Reorganized Debtor by the Holder of such Allowed Claim to whom such check originally was issued. Any claim in respect of such voided check shall be made on or before thirty (30) days after the sixty (60) day period following the date of issuance of such check. If any Holder of an Allowed Claim does not assert a claim pursuant to this Plan for reissuance of a voided check within such period, the amount represented by such voided check shall be deemed to be forfeited by such Holder, whereupon all right, title and interest in and to such amount shall be held by the Reorganized Debtor, and any Holder thereof shall be forever barred, estopped and enjoined from asserting any such Claim against the Debtor, the Estate, and the Reorganized Debtor. In such cases, any Cash or other Property otherwise reserved for such distributions shall become Property of the Reorganized Debtor free and clear of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary and shall be distributed in accordance with the terms of the Plan first to pay Allowed Administrative Claims, Priority Tax Claims, or Professional Fee Claims, then to the other Holders of Allowed Class 4 General Unsecured Claims on a Pro Rata basis (subject to the terms and conditions of this Plan).

**6.10.** **Withholding Taxes**.

(a)     Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Holders of Allowed Claims or Interests shall be required to provide any information necessary to effect the withholding of such taxes. To the extent that any Claim Holder or Equity Security Holder fails to submit appropriate certifications required by the Reorganized Debtor or to comply with any other mechanism established by the Reorganized Debtor to comply with Tax withholding requirements, such Claim Holder's or Interest Holder's distribution may, in the exercise of the Reorganized Debtor's reasonable discretion, be deemed undeliverable.

(b)     Notwithstanding any other provision of the Plan, each Entity receiving a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other tax obligations.

(c)     In connection with the Plan, the Reorganized Debtor may allocate and make distributions in compliance with applicable wage garnishment, alimony, child support and similar domestic relations orders.

**6.11.    Fractional Cents**. Any other provision of the Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

**6.12.    De Minimis Distributions**. The Reorganized Debtor shall not be required to make any payment of less than twenty-five dollars ($25.00) with respect to any Allowed Claim. To the extent that any interim distribution is not paid on an Allowed General Unsecured Claim on the grounds that it amounts to less than twenty-five dollars ($25.00), the amount of such withheld distribution shall be reserved for addition to any future distribution and may be made at that time if the total distribution is at least twenty-five dollars ($25.00), or as the final distribution on such Allowed General Unsecured Claim.

**6.13.    Setoffs**. Nothing in this Plan shall expand or enhance a Creditor's rights of setoff and recoupment, which shall be determined as of the applicable Petition Date. Nothing in this Plan is intended to, or shall be interpreted to, approve any Creditor's effectuation of a post-petition setoff or recoupment without the consent of the Debtor unless prior Bankruptcy Court approval has been obtained. Except as otherwise provided for herein, with respect to Causes of Action released by or on behalf of the Estate pursuant to the Plan and the Confirmation Order, the Reorganized Debtor may, but shall not be required to, exercise its right setoff and recoupment, pursuant to sections 553 and 558 of the Bankruptcy Code or applicable nonbankruptcy law, against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, Causes of Action of any nature whatsoever that the Estate may have against the Holder of such Claim, but neither the failure to do so nor the allowance of a Claim shall constitute a waiver or release by the Debtor or its Estate of any Claim it may have against the Creditor.

### ARTICLE VII
### EFFECTIVENESS OF THE PLAN

**7.1.    Condition Precedent to Confirmation of Plan**. The following are conditions precedent to the confirmation of the Plan:

(a)     The Bankruptcy Court shall have entered a Confirmation Order in form and substance satisfactory to the Plan Proponents.

(b)     All exhibits to the Plan are in the form and substance reasonably satisfactory to the Plan Proponents.

**7.2.     Conditions Precedent to Effective Date**. The following are conditions precedent to the Effective Date of the Plan:

(a)     The Confirmation Order shall have become a Final Order;

(b)     The Confirmation Order, in form and substance reasonably satisfactory to the Debtor, the Creditors' Committee, and Wells Fargo Energy Capital has been entered and is not stayed;

(c)     All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, inform and substance satisfactory to the Debtor, Creditors' Committee, and Wells Fargo Energy Capital;

(d)     All authorizations, consents and regulatory approvals, if any, required by the Debtor in connection with the consummation of the Plan are obtained and not revoked;

(e)     Any modifications to the Plan are in a form acceptable to the Debtors, the Creditors' Committee, and Wells Fargo Energy Capital;

(f)     All necessary documents relating to the Sentinel Prospect including the Assignment of the Mountain View Energy Contributed Leases, the Assignment of Net Profits Interest, the Mountain View Energy Operating Contribution, and the SM Energy Assignment referenced in Section 4.4(a) of the Plan are executed and delivered, as applicable.

**7.3.     Waiver of Conditions**. The Plan Proponents, acting unanimously and in writing, may at any time, without notice or authorization of the Bankruptcy Court, waive one or more of the conditions set forth in Sections 7.1 and 7.2 of the Plan.

**7.4.     Satisfaction of Conditions**. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously. If the Debtor decides that one of the conditions precedent set forth in Section 7.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtor shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

**7.5.**     **Effect of Nonoccurrence of Conditions to Effective Date**. If each of the conditions to consummation and the occurrence of the Effective Date has not been satisfied or duly waived on or before ninety (90) days after the Confirmation Date, the Confirmation Order may be vacated by the Bankruptcy Court. If the Confirmation Order is vacated pursuant to this Section, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver, or release of any Claims against the Debtor.

**7.6.**     **Notice of Effective Date**. On the Effective Date, or as soon thereafter as is reasonably practicable, Debtor shall File with the Bankruptcy Court a "Notice of Effective Date" in a form reasonably acceptable to the Plan Proponents, which notice shall constitute appropriate and adequate notice that the Plan has become effective. Failure to timely file the notice shall not in any way affect the effectiveness of the Plan.

**7.7.**     **Request for Waiver of Stay of Confirmation Order**. The Plan shall serve as a motion seeking a waiver of the stay of the Confirmation Order imposed by Bankruptcy Rule 3020(e). Any objection to this request for waiver shall be filed with the Bankruptcy Court and served in accordance with the Bankruptcy Rules or as otherwise ordered by the Bankruptcy Court. In the event any such objections are timely filed, a hearing with respect thereto shall occur at the Confirmation Hearing.

**7.8.**     **Asset Purchase Agreement**. Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed to modify or otherwise affect the terms and conditions of the Sale Transaction or the PSA. In the event of a conflict between the Plan, on the one hand, and the PSA, on the other hand, the PSA, shall control.

**ARTICLE VIII**
**MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN**

**8.1.**     **Assignment of Mountain View Energy Contributed Leases in Sentinel Prospect and Net Profits Interests**.

Within 30 days after the Effective Date, Mountain View Energy shall assign to the Reorganized Debtor all of its interest in the Mountain View Energy Contributed Leases as set forth in Exhibit B.

Within 15 days of assignment of the Mountain View Energy Contributed Leases to the Reorganized Debtor, the Reorganized Debtor shall execute and record the Assignment of Net Profits Interest, substantially in the form set forth in the attached Exhibit A.

The Assignment of Net Profits Interest shall convey a seventy-five percent (75%) Net Profits Interest in Reorganized Debtor's working interest in the Sentinel Prospect. Reorganized Debtor retains twenty-five percent (25%) of the Net Profits Interest to defray ongoing general and administrative expenses.  The seventy-five percent (75%) Net Profits

24

Interest shall be assigned on a pro rata basis between the total amount of Allowed Claims in Class 2 and the total amount of Allowed Claims in Class 4. Pursuant to the Assignment of Net Profits Interest, Reorganized Debtor shall pay Net Profits actually generated and received from the Sentinel Prospect, if any, on a quarterly basis, subject to de minimus distribution limits.

Following resolution of any Disputed Claims, Reorganized Debtor shall file a supplement(s) to the Assignment of Net Profits Interest setting forth the final percentages of each assignee's interest based on their pro rata share of Allowed Claims in the participating Classes.

Neither Debtor or Mountain View Energy make any warranty of title of the Mountain View Energy Contributed Leases or of the Assignment of Net Profits Interest. Neither Debtor or Mountain View Energy make any warranty of the viability of the Sentinel Prospect, whether sufficient investors can be secured to develop the Sentinel Prospect, the amount of income or existence of Net Profits after taking into account drilling and operating costs, or when or whether Net Profits will be generated or payable in light of drilling and operating costs.

The specific provisions related to the operation and accounting for Net Profits are set forth in the Assignment of Net Profits Interest.

**8.2.** **Funding of the Plan**. All obligations of the Reorganized Debtor under the Plan will be paid or caused to be paid by such Reorganized Debtor from Available Cash, Additional Available Cash as applicable, the Mountain View Energy Operating Contribution, and from the Reorganized Debtor's operation of the Sentinel Prospect.

**8.3.** **Preservation/Vesting of Rights of Action**. Except as expressly released or otherwise provided under the Plan, pursuant to Bankruptcy Code section 1123(b), the Reorganized Debtor shall be vested on the Effective Date with and shall retain and may enforce any and all Causes of Action that the Debtor, the Estate or the Creditors' Committee may hold or have against any entity, including (i) the Avoidance Actions, (ii) the American Pipe Claims; (iii) any legal or equitable rights to subordinate and/or disallow Claims, (iv) any derivative Causes of Action that may be brought by such Debtor; and (v) any and all other Causes of Action of any kind or nature of such Debtor or its Estate that may exist as a consequence of applicable bankruptcy law or nonbankruptcy law (collectively, the "Retained Actions"). Except as expressly released or otherwise provided pursuant to the Plan, upon the Effective Date, the Reorganized Debtor and only the Reorganized Debtor shall have standing to assert the Retained Actions and it may prosecute, abandon, settle or otherwise dispose of the Retained Actions in its sole discretion. Notwithstanding the foregoing, the Retained Actions shall not include any Claim, right or cause of action released pursuant to the Plan.

25

**ARTICLE IX**
**EFFECT OF CONFIRMATION**

**9.1.** **Vesting of Assets**. Except as otherwise explicitly provided in the Plan, on the Effective Date, all Property or interest in Property comprising the Debtor's Estate shall revest in the Reorganized Debtor free and clear of all Claims, Liens, charges, encumbrances, rights, and interests of creditors and equity security holders. As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**9.2.** **Binding Effect of Plan/Full Satisfaction and Release of Claims/Discharge of Debtor**.

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of any and all Claims, including, but not limited to, Claims (whether Allowed or Disallowed), Administrative Claims, Professional Fee Claims, and causes of action (whether known or unknown) against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtor or the Reorganized Debtor or any of their assets or Property, regardless of whether any Property shall have been distributed or retained pursuant to the Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of the Debtor prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program which occurred prior to the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of Claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the Holder of such a Claim, right, or Interest accepted the Plan. Unless otherwise provided for in the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtor and Reorganized Debtor, subject to the occurrence of the Effective Date.

**9.3.** **Term of Injunctions or Stays**. Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following the Effective Date.

9.4.      **Injunction**. On and after the Confirmation Date, all persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of or respecting any claim, debt, right, or cause of action of the Debtor.

9.5.      **Injunction Against Interference with Plan**. Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

9.6.      **Release by Debtor**.

**Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, the Debtor, the Estate, and their respective successors and assigns and any and all entities who may purport to claim through them, shall forever release, waive and discharge the Debtor, the Creditors' Committee, and the current and former officers of the Debtor of any and all Claims and Causes of Action whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise that the Debtor or the Estate, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of any Holder of any Claim or other entity, that they have, had or may have against any existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtor, any prepetition or postpetition act taken or omitted to be taken in connection with or related to or arising out of the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any party released under this Section 9.6, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring, or the Chapter 11 Case, including but not limited to, any Claim relating to, or arising out of the Chapter 11 Case, the administration of the Chapter 11 Case and all documents or pleadings filed herein, the negotiation and filing of the plan, the filing of the Chapter 11 Case, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of the Plan, the Disclosure Statement, exhibits, the Plan Supplement documents, any employee benefit plan, instrument, release, or other agreement or document created, modified, amended or entered into in connection with the Plan. The Reorganized Debtor that will be continuing the Debtor's business after the Effective Date shall be bound, to the same extent the Debtor is bound, by the releases and discharges set forth above; provided, however, that the foregoing provisions of Section 9.6 shall have no effect on the liability of any party released hereunder that would otherwise result from (a) the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or**

27

(b) any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

9.7.    **Exculpation**.

Except as otherwise specifically provided in the Plan, exhibits, the Plan Supplement or related documents and to the maximum extent permitted by law, none of the Debtor, the Creditors' Committee, and any of their respective members, officers, directors, trustees, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives, acting in such capacity (collectively, the "Exculpated Parties") shall have or incur any liability to any Holder of a Claim against or Interest in the Debtor, or any other party-in-interest or any of their representatives, or any of their successors and assigns, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter 11 Case the pursuit of confirmation of this Plan, or the consummation of this Plan. The Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under this Amended Plan or in the context of the Chapter 11 Case. No Holder of a Claim against or Interest in the Debtor, or any other party-in-interest, including their respective representatives, successors, or assigns shall have any right of action against the Exculpated Parties for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of this Plan <u>provided</u>, <u>however</u>, that the foregoing provisions of Section 9.7 shall have no effect on the liability of any Exculpated Party that would otherwise result from (a) the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. Nothing in this Section 9.7 shall be deemed to exculpate or release any Exculpated Party for any acts, omissions, transactions, events or other occurrences taking place after the Confirmation Date.

9.8    **Injunction Related to Releases.**

Except as otherwise expressly provided in the Plan or in the Confirmation Order, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor or the Estate that arose prior to the Effective Date are permanently enjoined from:  (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against any party released or exculpated under the Plan or any property of such party with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree or order against any party released or exculpated under the Plan or any property of such party with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against any party released or exculpated under the Plan or any property of such party with respect to any such Claim or Interest; (d) effecting, directly or indirectly, any

28

setoff or recoupment of any kind against any obligation due to any party released or exculpated under the Plan or any property of such party with respect to any such Claim or Interest; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest.

## ARTICLE X
## RETENTION OF JURISDICTION

**10.1.    Jurisdiction of Bankruptcy Court**. The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine motions for the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases and the allowance of Claims resulting therefrom;

(b)    To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date; including, without limitation, any proceeding to recover a Cause of Action and Avoidance Actions;

(c)    To hear, adjudicate, determine and allocate the value(s) of any property owned or sold by the Estate and any liens asserted against such property; including, without limitation the Sale Proceeds;

(d)    To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(e)    To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(f)    To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)    To hear and determine any issue or dispute arising under or related to the PSA, however, only to the extent such issue or dispute involves the Debtor;

(i)    To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j)    To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred with relation to the Chapter 11 Case or the American Pipe Claims;

(k)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(l)    To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(m)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, matters with respect to any taxes payable by a trust or reserve established in furtherance of the Plan);

(o)    To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)    To hear and determine any pending adversary proceedings as of the Effective Date or approval of settlement or resolution of the American Pipe Claims; and

(q)    To enter a final decree discharging the Debtor, and closing the Chapter 11 Case.

## ARTICLE XI
## CRAMDOWN RESERVATION

**11.1.    Nonconsensual Confirmation**. If any impaired class votes to accept the Plan by the requisite statutory majorities provided in sections 1126(c) and 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Plan Proponents reserve the right to undertake to have the Bankruptcy Court

confirm the Plan under section 1129(c) of the Bankruptcy Code and/or amend the Plan to the extent necessary to obtain entry of a confirmation order.

## ARTICLE XII
## OTHER PLAN PROVISIONS

**12.1.    Dissolution of Creditors' Committee**. The Creditors' Committee shall dissolve on the Effective Date.

**12.2.    Substantial Consummation**. On the Effective Date or as soon thereafter as practicable, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**12.3.    Exemption from Transfer Taxes**. Subject to orders entered by the Bankruptcy Court prior to the Confirmation Date authorizing certain sales of real property, pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

**12.4.    Payment of Statutory Fees**. On the Effective Date, and thereafter as may be required, the Reorganized Debtor shall cause to be paid from Available Cash all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

**12.5.    Modification of Plan**. The Plan may be amended, modified, or supplemented by the Plan Proponents in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Interests under the Plan, the Plan Proponents may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. Prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests.

**12.6.    Revocation or Withdrawal of Plan**. The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date with the consent of Wells Fargo Energy Capital. If the Plan Proponents take such action, the Plan shall be deemed null and void.

**12.7.** **Courts of Competent Jurisdiction**. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**12.8.** **Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Montana shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and (b) the laws of the state of incorporation or organization of the Debtor shall govern corporate or other governance matters with respect to the Debtor, in either case without giving effect to the principles of conflicts of law thereof.

**12.9.** **Exhibits**. All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**12.10.** **Successors and Assigns**. All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

**12.11.** **Time**. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.12.** **Notices**. All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to Debtor:

GUTHALS, HUNNES & REUSS, P.C.
Jeffery A. Hunnes
Laura T. Myers
P.O. Box 1977
Billings, MT  59103-1977
T: (406) 245-3071
F: (406) 245-3074
jhunnes@ghrlawfirm.com
lmyers@ghrlawfirm.com

If to the Creditors' Committee:

> WORDEN THANE, P.C.
> Martin S. King
> 111 N. Higgins Suite 600
> PO Box 4747
> Missoula, MT 59806
> T: (406) 203-3127
> F: (406) 721-6985
> mking@wordenthane.com

**12.13.   Entire Agreement**. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

Dated: October 16, 2017

Respectfully Submitted,

**Mountain Divide, LLC**

By: _____

Its: _Manager_____

**The Official Committee of Unsecured Creditors**

By: _____

Its: _Chairperson_____

33

If to the Creditors' Committee:

WORDEN THANE, P.C.
Martin S. King
111 N. Higgins Suite 600
PO Box 4747
Missoula, MT 59806
T: (406) 203-3127
F: (406) 721-6985
mking@wordenthane.com

**12.13.    Entire Agreement**. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

Dated: October 16, 2017

Respectfully Submitted,

**Mountain Divide, LLC**

By:_____
Its: _Manager_____

**The Official Committee of Unsecured Creditors**

By: _K R Neemacker_____
Its: _Chairperson_____

33

**EXHIBITS**

| | |
|---|---|
| Exhibit A | Assignment of Net Profits Interest |
| Exhibit B | Assignment of Leases |
| Exhibit C | Mountain View Energy Agreement to Fund and Capitalize |