UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**MOUNTAIN DIVIDE, LLC,**

Debtor.

Case No. **16-61015-11**

**MEMORANDUM OF DECISION**

At Butte in said District this 30th day of April, 2018.

In this Chapter 11[1] bankruptcy, Future Acquisition Company, LLC ("FAC"), Future Acquisition IV, LLC, Future Acquisition North Dakota, LLC, and Carl Price (collectively the "Movants") filed a "Motion to Enforce Sale Order" ("Motion"). ECF No. 392. In their Motion, Movants request that the Court find Deep River Operating, LLC ("Deep River") in contempt for violating an order authorizing the sale of substantially all Debtor's assets to FAC ("Sale Order") entered January 20, 2017, at ECF No. 199, and Movants also request that the Court impose sanctions against Deep River. Motion at 1-2. Deep River opposes the Motion arguing FAC and Deep River are private parties to a contract that has nothing to do with the Sale Order, that Deep River was never part of the Sale proceeding, and that Deep River is "in no way assailing, attacking, or otherwise trying to modify this Court's Sale Order." ECF No. 404 at 1 ("Response").

---

[1] Unless specified otherwise, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

The Motion came before the Court at a hearing held March 8, 2018. Movant's Exhibits 1 through 19 and Deep River's Exhibits B, C and D[2] were admitted into evidence. At the hearing, the Court heard attorney argument, but no witness testimony was offered. Movants' Motion and the objections of Deep River were taken under advisement following argument. This Memorandum of Decision constitutes the Court's findings and conclusions pursuant to Rules 7052 and 9014.

## Facts

Debtor filed a voluntary Chapter 11 bankruptcy petition on October 14, 2016. Prior to filing the petition, Debtor and Deep River entered into a Purchase and Sale Agreement dated September 30, 2016, that provided for the sale of substantially all of Debtor's assets to Deep River. Debtor terminated the Purchase and Sale Agreement after Deep River failed to deposit $600,000 with an escrow agent by October 12, 2016. ECF No. 433-2.

Shortly after terminating the Purchase and Sale Agreement, Debtor filed a motion seeking approval of its proposed sale and bidding procedures and proposed to sell substantially all of the Debtor's business assets and assume certain contracts and obligations in a sale to be conducted pursuant to §§ 105, 363 and 365. ECF No. 100. In that motion, Debtor represented that it had entered into a new Purchase and Sale Agreement with Deep River and FAC, who were jointly referred to in the motion as the "Buyer" and the "Stalking Horse Bidder." *Id.* Following a hearing, the Court approved

---

[2] Deep River's Exhibits B, C and D are the same as Movant's Exhibits 3, 18 and 19.

Debtor's proposed sale and bidding procedures and scheduled a sale hearing for January 2017. ECF Nos. 137 and 138.

At the bidding procedures hearing, Debtor reported to the Court that two bidders were identified and approved to participate in the auction of Debtor's assets: FAC and Murex Petroleum Corporation ("Murex"). ECF No. 191. An auction was held. FAC was the successful bidder at the auction with a bid of $4,000,000. *Id.* Debtor filed a proposed sale order, ECF No. 192, and the next day filed a redlined and clean amended proposed sale order. ECF No. 194. At the hearing on approval of the sale, Debtor's counsel explained that FAC and Murex had provided Debtor with acceptable proof of their financial ability to perform. The financial information provided by Deep River was not acceptable, prompting Debtor to ask for additional proof from Deep River of its financial ability to complete the sale. When the additional requested financial information was not forthcoming, Debtor disqualified Deep River as a bidder. Following the hearing, the Court entered the Sale Order.[3]

The Sale Order includes specific findings that Movants rely on in their Motion:

(i) that Deep River and FAC entered a purchase and sale agreement with the Debtor (¶ H);

(ii) the purchase and sale agreement required FAC and Deep River to tender proof of their respective and several obligations to perform as joint bidders (¶ H);

(iii) the Debtor conducted the sale process (including the Auction) without collusion and in accordance with the Sale and Bidding Procedures (¶ I);

---

[3] The Sale Order entered by the Court was in substantially the same form as submitted by the Debtor. Compare ECF No. 194-1 (the clean proposed sale order filed by Debtor) and ECF No. 199 (the Sale Order entered by the Court).

    (iv)    Murex submitted a competing bid with proof of financial ability which triggered FAC and Deep River's obligation to tender proof of financial ability (¶ J);

    (v)    FAC submitted suitable proof of financial ability, and while Deep River submitted documents to the Debtor, Debtor, in consultation with Wells Fargo Energy Capital, Inc. and the Official Committee of Unsecured Creditors, determined in its business judgment that Deep River's documentation did not comprise proof of Deep River's ability to close on the transaction, and accordingly, Debtor notified Deep River that it was disqualified to participate in the Auction (¶ J);

    (vi)    following Deep River's disqualification, FAC as the Step-in Bidder pursuant to the Sale and Bidding Procedures Order, assumed sole ownership and control of all beneficial rights and obligations under the terms of the Purchase and Sale Agreement, with FAC acting as the sole party thereunder (¶ K); and,

    (vii)    FAC bid the highest amount and was determined to have submitted the highest and best offer (¶ L).

ECF No. 199, ¶¶ H-L.

    As set forth in the Sale Order, the Court found that that the purchase and sale agreement submitted in connection with the Sale Motion, was negotiated and entered by the Debtor and FAC at arm's length without collusion or fraud, and in good faith within the meaning of § 363(m) of the Bankruptcy Code. Sale Order ¶ N. The Court also found that the assets would vest in FAC all right, title, and interest of the Debtor to the Purchased Assets free and clear of liens, claims and interests. Sale Order ¶ R. The Court further found that FAC would not have entered the Purchase and Sale Agreement, or completed the transaction if the sale were not "free and clear" under § 363(f). Sale Order ¶ S. Finally, the Court found that the standards set forth in § 363(f)(l)-(5) of the

4

Bankruptcy Code had been satisfied. Sale Order ¶ T (collectively, Sale Order ¶¶ H-L, N, R, S, and T are referred to as the "Findings").

Paragraph 5 of the Sale Order ordered, adjudged and decreed that the transfer of assets was free and clear, consistent with paragraphs R, S, and T. The Sale Order enjoined a litany of persons and entities from asserting, prosecuting or otherwise pursuing such "Interests" against FAC and its officers, directors, its affiliates, agents, advisors, representatives, officers, successors and assigns. Sale Order ¶ 9. Finally, the Sale Order provided:

> The Purchase and Sale Agreement has been entered into by FAC in good faith and FAC is a good faith purchaser of the Purchased Assets as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale shall not affect the validity of this Sale, unless such authorization is duly stayed before the Closing pending such appeal. FAC is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

Sale Order ¶ 10 (collectively, ¶¶ 5, 9 and 10 are referred to as the "Conclusions"). Deep River did not appeal or otherwise attack the Sale Order. On February 20, 2017, Debtor filed a notice that it had completed the closing of the sale to FAC pursuant to the Asset Purchase Sale Agreement ("Sale Agreement") and the Court's Order of January 20, 2017. Debtor's Chapter 11 Plan was confirmed on November 30, 2017.

On August 14, 2017, FAC filed a complaint against Deep River in the United States District Court for the Southern District of Texas, Houston Division ("Texas Litigation"). FAC alleged that Deep River breached provisions of an Amended Joint Bid

5

Agreement dated November 3, 2016 ("Bid Agreement").[4] Deep River answered the complaint and filed counterclaims alleging that FAC had breached the Bid Agreement and that FAC had tortiously interfered with Deep River's existing and prospective contracts ("Counterclaims").

## **Jurisdiction**

FAC contends this Court has the jurisdiction to interpret and enforce its own orders, and that FAC is asking this Court to interpret and enforce the Sale order. Deep River counters that this Court lacks jurisdiction to decide its Counterclaims because the Counterclaims do not impact the Sale Order and are independent claims between two private parties. FAC is not, as Deep River suggests, asking that this Court resolve the Counterclaims. Rather, in deciding the Motion, this Court is tasked with deciding whether the Counterclaims are an attack on the Sale Order. This Court has jurisdiction to make such a determination.

A bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Matters

---

[4] Prior to the Motion, the Bid Agreement was not disclosed to, or otherwise part of the proceedings before the Court. The Bid Agreement outlines terms under which FAC and Deep River would jointly acquire Debtor's assets. If successful, FAC would acquire a direct 30% working interest and operate the assets purchased from the Debtor, and Deep River would be the owner of the remaining 70% working interest in the purchased assets. Section 1.3 of the Amended Joint Bid Agreement provides that FAC, in addition to other amounts, would promptly pay Deep River $100,000 as an advance for transactional fees. FAC and Deep River also agreed in Section 3.1 of that agreement that neither would "take any action which could reasonably be expected to adversely impact or impede the other party's ability to acquire its share of the Assets at the Closing."

involving a court's construction of its own orders arise under title 11. The Court of Appeals for the Ninth Circuit explained:

> Simply put, bankruptcy courts must retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are ultimately executed in the intended manner. Requests for bankruptcy courts to construe their own orders must be considered to arise under title 11 if the policies underlying the Code are to be effectively implemented.

*Beneficial Trust Deeds v. Franklin (In re Franklin)*, 802 F.2d 324, 326–27 (9th Cir. 1986). "[I]t is well recognized that a bankruptcy court has the power to interpret and enforce its own orders." *In re Wilshire Courtyard*, 729 F.3d 1279, 1289 (9th Cir. 2013). *See also, Travelers Indemnity Company v. Bailey*, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009). Finally, the jurisdiction is core because it involves an order issued in a core proceeding under 28 U.S.C. § 157(b)(2)(N). *HHI FormTech, LLC v. Magna Powertrain USA, Inc. (In re FormTech Indus., LLC)*, 439 B.R. 352, 357, 358 (Bankr. D.Del. 2010) citing *In re Trans World Airlines, Inc.*, 278 B.R. 42, 49 n. 16 (Bankr. D.Del. 2002) ("Core proceedings under § 157(b)(2)(N) are those which arise from, concern, or have some impact on 'orders approving the sale of property'...."). Consideration of whether Deep River's Counterclaims are barred by the Sales Order is a core matter over which this Court has jurisdiction.

## Discussion

Movants request this Court employ its contempt power and find that the Counterclaims violate specific language in the Sale Order. More specifically, pursuant to §§ 105 and 363(f) and 28 U.S.C. §§ 157 and 1334, Movants request an order:

. . . . . requiring Deep River (i) to immediately dismiss the Counterclaims asserted in the Southern District of Texas with prejudice, (ii) to immediately pay the costs and expenses of Movants, including attorneys' fees, previously incurred and that continue to accrue, as a result of Deep River's contempt, including those fees and expenses incurred (A) litigating in the Southern District of Texas, and (B) with regard to this Motion; and (iii) to pay Movants the per diem amount of $1,000, until Deep River purges its contempt by complying with the orders of this Court, and granting the Moving Parties such other relief as is just, proper, and equitable.

To prevail on their request, Movants must establish by "clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Dyer*, 322 F.3d 1178, 1189 (9th Cir. 2003). The clear and convincing standard of proof requires evidence sufficient to reasonably satisfy the fact finder that it is highly probable the ultimate fact at issue happened. *See generally*, *Colorado v. New Mexico*, 467 U.S. 310, 315, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984).

In an effort to show that Deep River violated the Sale Order, Movants direct the Court to specific language in the Sale Order, which they characterize as follows:

> The Sale Order expressly provided that FAC is a good faith purchaser of the Debtor's assets free and clear of any interests therein. Most significantly, the Sale Order expressly provides that the sale to FAC is without liability for "any claims by any person acting by, through or on behalf of Deep River.[5]

Motion at 2, citing Sale Order ¶¶ N, R–T, 5, 10.

Movants reason that the Deep River Counterclaims are interests under § 363(f), that the sale was free and clear of "interests" under § 363(f), and that holders of interests

---

[5] Movants' summary of the Sale Order language glosses over important language included in the Order. In particular, the Order provides, the sale was "free and clear of any claims by any person acting by, through or on behalf of Deep River *that FAC was not duly and properly the sole beneficiary of all rights under the original Purchase and Sale Agreement as the Step-in Bidder under the terms of the Sale and Bidding Procedures Order*." Sale Order ¶ S (v)(x) (emphasis added).

were "forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such interests." Motion ¶ 7. Movants assert that FAC was expressly exculpated from "any claims Deep River could assert relating to the sale of the Debtor's assets[.]" Motion at 2. Finally, Movants refer to the Sale Order's good faith finding for purposes of § 363(m), (Motion ¶ 5) and argued at the hearing that this finding could not be reconciled with the Counterclaims.

### A. Whether Deep River's Counterclaims Are Interests Under § 363(f)

Pursuant to §§ 363(f) and 1107, a debtor in possession is authorized to "sell property under subsection (b) or (c) of this section free and clear of any *interest* in such property of an entity other than the estate" if any of the conditions listed thereunder are satisfied. § 363(f) (emphasis added). Movants' Motion is premised on their contention that the Counterclaims are "interests" for the purposes of § 363(f). Movant's cite 3 *Collier on Bankruptcy* ¶ 363.06[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017) for the proposition that, "[a]lthough some courts have limited the term to *in rem* interests in the property, the trend seems to be in favor of a broader definition that encompasses other obligations that may flow from ownership of the property." Movants' reason that the Counterclaims are "connected to, or arise from, the purchased assets and are interests for the purposes of § 363(f)." To support its reasoning, Movants rely on *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3rd Cir. 2003) and *UMWA 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573, 582 (4th Cir. 1996).

9

*Trans World* and *Leckie* adopt a broad definition of "interest" in their construction and application of § 363(f). "In *Leckie,* the Fourth Circuit held that, irrespective of whether the purchasers of the debtors' assets were successors in interest, under § 363(f), the Bankruptcy Court could properly extinguish all successor liability claims against the purchasers arising under the Coal Act by entering an order transferring the debtors' assets free and clear of those claims." *Trans World*, 322 F.3d at 289. Similarly, in *Trans World*, the Third Circuit concluded that § 363(f) extinguished successor liability to the acquirer of debtor's assets for a series of employee related claims that alleged various forms of discrimination finding that such claims "arise from the property being sold." *Trans World*, 322 F.3d at 289, 290.[6] While the trend seems to be in favor of a broader definition of "interests," and one that encompasses other obligations that may flow from ownership of the property, the cases cited by Movants do not stand for the proposition that any claim against any successful bidder in a § 363 sale, by third-parties, constitutes an "interest" for "free and clear" purposes of § 363(f).

---

[6] In *Trans World*, the Third Circuit reasoned:

> In each case it was the assets of the debtor which gave rise to the claims. Had TWA not invested in airline assets, which required the employment of the EEOC claimants, those successor liability claims would not have arisen. Furthermore, TWA's investment in commercial aviation is inextricably linked to its employment of the Knox-Schillinger claimants as flight attendants, and its ability to distribute travel vouchers as part of the settlement agreement. While the interests of the EEOC and the Knox-Schillinger class in the assets of TWA's bankruptcy estate are not interests in property in the sense that they are not *in rem* interests, the reasoning of *Leckie* and *Folger Adam* suggests that they are interests in property within the meaning of section 363(f) in the sense that they arise from the property being sold.

*Id.*, 322 F.3d at 290.

10

Unlike the claims in *Leckie* and *Trans World*, the Counterclaims are not successor liability claims that Deep River initially had against the Debtor, and now seeks to enforce against Movants, or the assets acquired by Movants. Instead, Deep River's Counterclaims are independent claims based on the Bid Agreement. The Bid Agreement was executed post-petition by Deep River and FAC. To conclude that the Counterclaims must be "connected to, or arise from, the property being sold" sufficient for constituting an interest under § 363(f) merely because FAC ultimately acquired the assets, ignores the successor liability component of the *Trans World* and *Leckie* analysis. The rationale urged by Movants under these circumstances stretches the definition of "interests" far beyond the holdings of the cases on which they rely. The Counterclaims do not flow from the ownership of the property by FAC sufficient to conclude that they are "interests" under § 363(f).

Notably, neither FAC's claims against Deep River nor the Counterclaims against FAC are dependent on FAC's ownership of the property, or the outcome of the Sale. Movants allege that "Defendants are jointly and severally liable for the remittance of the $100,000.00 advance as outlined in the [Amended Joint Bid] Agreement." Ex. C ¶ 13. If FAC and Deep River were not the successful bidder, the Bid Agreement would terminate. Ex. B ¶ 13 4.1[a](iv). Despite termination of the Bid Agreement, Deep River, and each of its equity holders, would remain jointly and severally liable to reimburse and promptly pay $100,000 to FAC for its advance to Deep River for Deep River's transaction expenses. Ex. B ¶ 4.1(d). FAC and Deep River's claims against each other were not dependent upon the outcome of the Sale, (i.e., FAC's successful acquisition of the assets).

11

The claims asserted in the Texas Litigation would exist even if Murex, or another bidder, had acquired the assets. Thus, it is difficult to conclude that the Counterclaims are "connected to, or arise from, the property being sold," as urged by Movants.

Movants argue that this case is factually analogous to *GAF Holdings, LLC v. Rinaldi (In re Farmland Indus., Inc.)*, 376 B.R. 718 (Bankr. W.D. Mo. 2007). In *Farmland*, the court dismissed GAF's complaint "for two reasons: (1) it is an impermissible collateral attack on the orders of this Court approving the procedures, validity, and finality of the sale of the Coffeyville Assets to CRLLC, and (2) it fails to state a claim upon which relief can be granted because the complaint is devoid of facts establishing essential elements of GAF's state-law claim for tortious interference with its business expectancy." *Id*. at 732. In *Farmland*, GAF claimed, "that the Defendants conspired to prevent GAF from participating in an auction of the Coffeyville Assets and misled the Court in their efforts to obtain approval of the sale to Coffeyville Resources, LLC, thereby preventing GAF and the Farmland bankruptcy estate from realizing the true value of the refinery, which GAF estimates is close to $1 billion." *Id.* at 721. Further, the "'very gist' of GAF's complaint was that the sale was improper and the result of a conspiracy, allegations that clearly conflict with the Court's findings of good faith." *Id*. at 727.

Deep River's Counterclaims do not allege that the Sale was improper, the result of a conspiracy, or that the Sale failed to maximize the value of the assets. The Counterclaims are premised upon Deep River's contractual relationship with FAC, and allege that FAC breached the Bid Agreement. Deep River also asserts two additional

tortious interference claims. These later tort claims, might at some future point collide with, and be tantamount to a collateral attack on the Sale Order such that *Farmland* might be analogous, but the record does not reflect that has occurred to date. At the hearing, Deep River's counsel repeatedly argued that Deep River was not challenging the Sale or sales process, and that it had no interest in upending the Sale. Given this argument, and the Court's own review of the Counterclaims, the record does not support concluding that the claims in this case mirror the claims in *Farmland*. Thus, the Court does not find it persuasive. This Court cannot conclude that the Counterclaims are "interests" under even the broadest interpretation of that term. The Counterclaims are not "interests" from which Movants were protected under § 363(f) and the Sale Order.

### B. Whether Deep River's Counterclaims directly conflict with any provision of the Sale Order

The evidence presented to the Court does not establish that the Counterclaims directly conflict with the Findings or Conclusions in the Sale Order. Relevant to the Court's inquiry are the Sale Order, the Verified Complaint, the Counterclaims, and the Bid Agreement. The Motion references various Findings and Conclusions, but having considered those cited by Movants in conjunction with the Verified Complaint (Ex. C), Counterclaims (Ex. D) and Bid Agreement (Ex. B), the Court cannot conclude that Deep River violated a specific and definite order of the court. Consideration of the Sale Order's specific language, not Movant's characterization of the Sale Order, supports this conclusion.

"Debtor conducted the sale process (including the auction) without collusion and FAC as the Step-in Bidder pursuant to the Sale and Bidding Procedures Order, assumed sole ownership and control of all beneficial rights and obligations under the terms of the Purchase and Sale Agreement." Sale Order ¶J. This does not conflict with the Counterclaims. And, Deep River affirmatively stated at the hearing that it is not alleging Debtor colluded, or that the Sale was the result of collusive efforts.

Next, "the purchase and sale agreement submitted in connection with the Sale Motion, was negotiated and entered by the Debtor and FAC at arm's length without collusion or fraud, and in good faith within the meaning of section 363(m)." Sale Order ¶ N. Again, the Counterclaims are not inconsistent with this finding. Deep River does not claim that Debtor and FAC entered the purchase and sale agreement as a result of collusion, fraud or bad faith. The Counterclaims do not directly implicate the Debtor. Instead, the Counterclaims allege FAC breached a contract with Deep River, and committed various torts under Texas law.

According to Movants:

> Most significantly, the Sale Order expressly provides that the sale to FAC is without liability for any claims by any person acting by, through or on behalf of Deep River.

Motion at 2, citing Sale Order ¶¶ N, R–T, 5, 10. Later, the Motion states:

> . . . . . the Court expressly ordered that the Sale of the Purchased Assets to FAC was free and clear of any claims by any person acting by, through or on behalf of Deep River that FAC was not duly and properly the sole beneficiary of all rights under the original Purchase and Sale Agreement as the Step-in Bidder under the terms of the Sale and Bidding Procedures Order.[7]

---

[7] The specific language is found at paragraph S in the Sale Order states:

14

Consideration of each of the forgoing demonstrates that the first quote omits important language included in the second quote. The omitted language is, "that FAC was not duly and properly the sole beneficiary of all rights under the original Purchase and Sale Agreement as the Step-in Bidder under the terms of the Sale and Bidding Procedures Order." This language limits the class of claims that were the subject of the Sale Order's free and clear language, to a narrow set of claims; claims that challenged FAC as the sole beneficiary of the Purchase and Sale, or as the Step-in bidder. The Counterclaims do not fall within this narrow set of claims. At this stage of the Texas Litigation, this Court cannot conclude on the record before it that the Counterclaims are inconsistent with, or otherwise violate the Sales Order in a manner that would support, much less warrant a finding of contempt.[8]

### C. Whether § 363(m) Protects Movants From Deep River's Counterclaims

While Movants do not specifically argue that § 363(m) affords them any sort of relief, they do argue in ¶ 5 of their Motion that FAC was "a 'good faith purchaser' under § 363(m) of the Bankruptcy Code and [is] 'entitled to all of the protections afforded

---

. . . . . any claims by any person acting by, through or on behalf of Deep River that FAC was not duly and properly the sole beneficiary of all rights under the original Purchase and Sale Agreement as the Step-in Bidder under the terms of the Sale and Bidding Procedures Order.

Sale Order ¶ S(v)(x).

[8] Counsel for Deep River went through the Sale Order paragraph by paragraph at the hearing, parsing the language in the Sale Order, illustrating that Deep River's counterclaims as presently pled, do not conflict with or otherwise violate the Sale Order.

thereby.'" While § 363(m) is implicated by the facts of this case, given Movants' reference to § 363(m), the Court will, for purposes of completeness, address that section. Section 363(m) protects the interests of good faith purchasers who buy property pursuant to a sale authorized under § 363(b) or (c), when a party in interest has failed to stay the sale pending appeal. *See Onouli–Kona Land Co. v. Estate of Richards (In re Onouli–Kona Land Co.)*, 846 F.2d 1170, 1171 (9th Cir.1988). The scope and breadth of § 363(m) protections is not limitless. "The protection applies only if the court, upon reversing or modifying the order authorizing the sale, would affect the validity of the sale." 3 *Collier on Bankruptcy* ¶ 363.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017). Further, the BAP has recognized that the protections of § 363(m) have limits:

> This limitation leads us to conclude that Congress intended that § 363(m) address only changes of title or other essential attributes of a sale, together with the changes of authorized possession that occur with leases. The terms of those sales, including the free and clear term at issue here, are not protected.

*Clear Channel Outdoor Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 35-36 (9th Cir. BAP 2008). Movants' argument that this Court's finding of good faith for purposes of § 363(m) precludes any claim by Deep River against FAC is not compelling. Section 363(m) serves the limited purpose of protecting a good faith purchaser when there is a risk of reversal or modification of the sale following appeal. There is no risk of reversal or modification on appeal in this case. At this point in the Texas Litigation, with the record before this Court, this Court cannot conclude that its good faith finding for purposes of § 363(m), precludes or otherwise supports enjoining Deep River from pursuing its Counterclaims or concluding that it has acted contemptuously.

**Conclusion**

Since the Texas Litigation is in its infancy, the record presented to the Court is limited. As the Texas Litigation evolves, the Counterclaims, particularly the tortious interference claims might in fact more closely resemble the claims in *Farmland*, or amount to a collateral attack on the Sale Order. However, to reach that conclusion now, this Court would have to speculate or make assumptions regarding the Texas Litigation, and it is unwilling to do so. For the reasons, outlined above, this Court cannot conclude that Movants established by clear and convincing evidence that Deep River's Counterclaims violate the Sale Order such that a finding of contempt is supported, or imposition of sanctions could be justified at this time. A separate Order consistent with this Memorandum Opinion will be entered.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana